# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

**No. 22-322V**

* * * * * * * * * * * * * * * * * * * * * * * * *
HEATHER PETERSON, * Chief Special Master Corcoran

Petitioner, * Filed: July 30, 2026

v. *

SECRETARY OF HEALTH AND HUMAN SERVICES, *

Respondent. *
* * * * * * * * * * * * * * * * * * * * * * * * *

*Edward Kraus*, Kraus Law Group, LLC, Chicago, IL, for Petitioner.

*Alexa Roggenkamp*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION GRANTING FINAL AWARD OF ATTORNEY'S FEES AND COSTS[1]

On March 24, 2022, Heather Peterson filed a petition under the National Vaccine Injury Compensation Program ("the Vaccine Program").[2] Petition, dated Mar. 24, 2022 (ECF No. 1) ("Pet."). Petitioner alleged that an influenza ("flu") vaccine she received on March 26, 2019, caused her to develop Transverse myelitis, that later evolved into multiple sclerosis ("MS"). Pet. at 3. After briefing their positions, I issued a decision dismissing the case on October 30, 2025. Decision, dated Oct. 30, 2025 (ECF No. 40). That Decision was not appealed, and judgment has since entered.

Petitioner has now filed a motion for a final award of attorney's fees and costs. Motion, dated June 2, 2026 (ECF No. 44) ("Mot."). This is Petitioner's sole such request. Petitioner

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

requests fees and costs relating to the work performed by her counsel at Kraus Law Group, LLC. Petitioner requests a total of $110,020.50, consisting of $78,937.70 in fees and $31,082.80 in costs. Mot. at 1. Respondent reacted to Petitioner's Motion, agreeing that Petitioner has satisfied the statutory requirements for a fees and costs award, and otherwise deferring the calculation of the amount to be awarded to my discretion. *See* Response, dated June 4, 2026 (ECF No. 45) at 2−4.

For the reasons set forth below, I hereby **GRANT** Petitioner's Motion, awarding fees and costs in the total amount of $110,020.50.

## ANALYSIS

### I. Petitioner's Claim had Reasonable Basis

Although the Vaccine Act only guarantees a fees award to successful petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs*., No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Importantly, establishing reasonable basis does not *automatically* entitle an unsuccessful claimant to fees, but is instead a threshold obligation; fees can still thereafter be limited, if unreasonable, or even denied entirely.

A claim's reasonable basis must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs*., 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs*., 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the claim—counsel's conduct is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. In addition, reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation). As a result, a claim can "lose" reasonable basis over time.

The standard for finding the existence of reasonable basis is inherently easier to satisfy than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs*., 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs*., 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be

considered. *Carter v. Sec'y of Health & Hum. Servs*., 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs*., 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).

Petitioner's claim was ultimately unsuccessful, but there was sufficient objective basis to entitle her to a fees and costs award. The overall weight of evidence was more supportive of an MS diagnosis, as Petitioner mostly accepted, but there were some reasonable questions about its presentation, or the capacity of the flu vaccine to cause it. Thus, and in light of the exceedingly lenient standard that governs reasonable basis determinations, a final award of fees and costs in this matter is permissible. And because I find no reason otherwise to deny a fees award, I will allow one herein.

I note, however, that in my experience deciding comparable cases, and based on my understanding of existing and persuasive Program decisions, claims alleging MS as a vaccine injury (or something that can be worsened by vaccine) are *far* more likely than not to result in dismissal (and the handful of decisions going the other way are unlikely to be followed by the majority of special masters). Counsel is on notice that in the future, cases involving theories for MS causation similar to the present will be deemed to lack reasonable basis *ab initio¸* absent new scientific discoveries that reasonably call into doubt what I have learned in performing my duties about MS's pathogenesis. I will not again authorize this kind of fees award for a comparable claim that was filed after this matter's resolution.

## II. Calculation of Fees

Only "reasonable" fees or costs may be awarded in the Program. Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis*" exception). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests the following rates for her various attorneys, based on the years work was performed:

| | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 |
|---|---|---|---|---|---|---|---|---|
| **Edward Kraus (Attorney)** | $418.00 | $435.00 | $458.00 | $472.00 | $497.00 | $525.00 | $564.00 | n/a |
| **Amy Kraus (Attorney)** | n/a | n/a | n/a | $414.00 | $436.00 | $460.00 | $494.00 | $535.00 |
| **Brynna Gang (Attorney)** | n/a | n/a | n/a | n/a | n/a | $412.00 | $443.00 | $478.00 |
| **Paralegals** | $145.00 | $160.00 | $170.00 | $170.00 | $177.00 | $186.00 | n/a | n/a |
| **Megan Vignocchi** | n/a | n/a | n/a | $160.00 | n/a | $175.00 | $180.00 | $195.00 |

Mot. at 5−11.

Mr. Kraus and his practice group have been recognized as entitled to "in forum" rates as established in *McCulloch*, thus entitling him and his associated attorneys to these commensurate rates. *See Burandt v. Sec'y of Health & Hum. Servs.*, No. 24-1472V, 2026 WL 1363094, at *1 (Fed. Cl. Spec. Mstr. Apr. 13, 2026). The hourly rates requested for the attorneys and their paralegals for time billed are also consistent with what has previously been awarded for the work of these attorneys in accordance with the Office of Special Masters' fee schedule. [3] *See Gutierrez v. Sec'y of Health & Hum. Servs.*, No. 24-1902V, 2026 WL 1822242, at *1 (Fed. Cl. Spec. Mstr. May 21, 2026). I thus find no cause to reduce them in this instance. And the total time billed to the matter was reasonable overall.

## III. Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 669, 670 (Fed. Cl. 2002); *Perreira*, 27 Fed. Cl. at 34. Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health and Hum. Servs.,* No. 10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying

[3] OSM Attorneys' Forum Hourly Rate Fee Schedules, https://www.uscfc.uscourts.gov/node/2914 (last visited July 30, 2026).

the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner seeks $31,082.80 in outstanding costs, including medical record retrieval costs, mailing costs, filing fees, and expert costs. Mot. at 1, 25−26, 61. Petitioner has provided supporting documentation for all claimed litigation-oriented costs. *See id* at 27−60, 62−79. The costs requested herein are typical in Program cases and were reasonably incurred in this matter, and Respondent offered no specific objection to the rates or amounts sought. Therefore, I find the requested litigation costs reasonable and hereby award them in full.

There is also the question of expert costs. Dr. Tornatore prepared two written reports for Petitioner and submitted an invoice reflecting a total amount of $26,750.00 (reflecting 59.5 hours of work billed at $500.00 per hour minus a $3,000 retainer paid by Petitioner's counsel on October 24, 2023). Mot. at 78. Dr. Tornatore has previously been awarded this requested rate, and I see no reason o make an alternate finding. *See M.K.S. v. Sec'y of Health & Hum. Servs.*, No. 21-1018V, 2025 WL 2402005, at *4 (Fed. Cl. Spec. Mstr. July 9, 2025). Additionally, I find the total amount of time dedicated to the matter to be reasonable and find no reason to make deductions. (I reiterate, however, that I will not compensate future experts for offering the kind of opinion that was prepared herein—and it will be especially unwise for Program counsel to again retain Dr. Tornatore to offer an opinion strikingly similar to this one, unless they are willing for him to forego fees entirely).

## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of an interim fees award, I **GRANT** Petitioner's Motion for a Final Award of Attorney's Fees and Costs. **I award a total of <u>$110,020.50</u> (reflecting $78,937.70 in attorney's fees, and $31,082.80 in costs) to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.** In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court SHALL ENTER JUDGMENT in accordance with the terms of this Decision.[4]

**IT IS SO ORDERED.**

<u>/s/ Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

[4] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.